UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT ALVAREZ, ) | |
| ) | |
| Petitioner, ) | No. 18 C 7142 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| DEANNA BROOKHART, ) | |
| Warden of Lawrence Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* petitioner Robert Alvarez filed for a writ of habeas corpus under 28 U.S.C. § 2254,[1] R. 1,[2] challenging his 2014 conviction in Illinois state court for aggravated kidnapping, as well as the resulting 30-year sentence. For the reasons that follow, Alvarez's petition is denied, and no certificate of appealability will be issued.

## I. Background

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Because Alvarez has not presented *any* new evidence to rebut the state court's

---

[1]This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241.
[2]Citations to the record are noted as "R." followed by the docket number.

findings, let alone evidence that is clear and convincing, this Court adopts the facts set forth by the Illinois Appellate Court on direct review.

### A. Factual Background

In December 2010, Miguel Moya was working at his auto-mechanic shop in Chicago when he received a fateful dispatch that a car needed to be towed. *People v. Alvarez*, 2018 WL 683816, at *1 (Ill. App. Ct. Feb. 1, 2018). Moya went to the location of the dispatch, where a man flagged him down and pointed to a car. *Id*. When Moya pulled up to the car, three men grabbed him, tied his hands, and put him in the back seat of the car. *Id*. The men drove him to a garage, where they then took him out of the car, hit him, and bound him with tape. *Id*.

Shortly after, Moya's son, Aldo Moya, received a phone call from a man who told him that "they" had his father and that Aldo had to get them $90,000 or else they would kill Moya. *Id*. Aldo did not contact the police, because he was afraid that his father would get hurt. *Id*. As luck would have it, however, a Chicago police sergeant happened upon the garage and heard "thumping" and "muffled" coming from inside it. *Id*. The sergeant called other officers and went back to the scene. *Id*. at *2. According to police-officer testimony, Alvarez ran from the garage toward the house and disobeyed the sergeant's direct order to stop. *Id*. The sergeant eventually caught up to Alvarez. *Id*. Alvarez was wearing a gray hooded sweatshirt and latex gloves, and his arms were covered in "blood or red stains." *Id*. At trial, a forensic scientist testified that the sweatshirt contained DNA from Moya. *Id*.

Assistant State's Attorney Jessie McGuire met with Alvarez at the police station and provided him with a *Miranda* warning. *Id.* at *3. According to McGuire, Alvarez stated that he understood his rights and agreed to have his statement written down—but then Alvarez refused to sign the statement. *Id.* McGuire testified that, in the unsigned statement, Alvarez asserted that he borrowed $3,000 from "Rafa's uncle" and that this "Rafa" asked him to be the lookout for a kidnapping planned in Chicago to pay off the debt. *Id.* At trial, Alvarez testified that, rather than running from the police, he walked away "a little faster" from the officers because he did not know they were police. *Id.* at *5.

### B. Trial and Direct Review

Following a jury trial, Alvarez was found guilty of aggravated kidnapping and sentenced to 30 years' imprisonment. *Alvarez*, 2018 WL 683816, at *1. On direct appeal to the Illinois Appellate Court, Alvarez argued that (1) the trial court erred when it failed to instruct the jury on the affirmative defense of compulsion; and (2) the trial court should have given a "mere presence" instruction with the accountability instruction. *See* R. 15-2, State Ct. R., Exh. B, Pet'r's App. Br. at 2. In a written opinion, the Illinois Appellate Court affirmed the conviction and sentence. *Alvarez*, 2018 WL 683816, at *1. Alvarez did not file a post-conviction petition, R. 1, Habeas Pet. at 3, and (as discussed later in this Opinion) the parties dispute whether Alvarez filed a petition for leave to appeal in the Illinois Supreme Court. *See* R. 20, Pet. for Leave to Appeal at 74-91;[3] R. 14, Resp't's Answer at 4.

---

[3]Page citations to R. 20 (Alvarez's reply brief and exhibits) are to the PDF pagination because there is no page-numbering scheme for the filing.

In October 2018, Alvarez filed a federal habeas petition in this Court.[4] He asserts nine claims: (1) his trial counsel's representation was ineffective; (2) the State improperly elicited incriminating statements from Alvarez after he was charged; (3) the State knowingly failed to inform the defense that the witness who testified was not the kidnapped victim; (4) the State obtained a coerced confession from Alvarez without providing *Miranda* warnings; (5) the State violated the Fourth Amendment in obtaining evidence used to convict Alvarez; (6) the trial court erred by denying Alvarez's speedy-trial demand; (7) Alvarez's case was wrongfully transferred from one judge to another; (8) Alvarez's sentence was greater than the legislature intended; and (9) Alvarez is actually innocent. Habeas Pet. at 5-17. A week after filing the original petition, Alvarez filed an amended habeas petition, largely repeating five of his existing arguments: (1) ineffective assistance of trial counsel; (2) the prosecution's failure to disclose the identity of a material witness; (3) the State's use of a coerced confession and illegally obtained evidence; (4) the *Miranda* violation; and (5) the alleged speedy-trial violation and excessive sentence. R. 4, Am. Habeas Pet. at 1-57.

## II. Analysis

### A. Exhaustion of State Remedies

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court. *See* 28 U.S.C.

---

[4]Alvarez's habeas petition was timely filed under 28 U.S.C. § 2244(d)(1)(A), within the one-year period that began on March 8, 2018, when the judgment of the Illinois Appellate Court became final. *See* Ill. Sup. Ct. R. 315(b)(2).

4

§ 2254(b)(1)(A). The purpose of this rule is to "giv[e] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)) (cleaned up).[5] A habeas petitioner must fully and fairly present his federal claims through one complete round of state appellate review before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, the petitioner must have raised his habeas claims either (1) on direct appeal to the Illinois Appellate Court and then in a petition for leave to appeal to the Illinois Supreme Court; or (2) in post-conviction proceedings. *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). If a petitioner has failed to properly assert the federal claims at each level of state review, then the claims are procedurally defaulted. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A claim is also procedurally defaulted when a petitioner fails to raise the federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal-court review of a petitioner's habeas claims. *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

Here, Alvarez failed to exhaust state court remedies because he did not present his habeas claims at each level of state review (and it is undisputed that he did not

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

file a post-conviction petition). *See* Habeas Pet. at 5-17; *O'Sullivan*, 526 U.S. at 838. Instead, on direct appeal to the Illinois Appellate Court, Alvarez challenged only the jury instructions used at trial. Pet'r's App. Br. at 2. Nevertheless, Alvarez argues that he exhausted state remedies because he eventually raised his habeas claims—or some of them, at least—in the petition for leave to appeal that he allegedly filed with the Illinois Supreme Court. But to the extent Alvarez actually filed for leave to appeal, he did so more than two months after the Illinois Appellate Court's judgment, well past the 35-day deadline set by the Illinois Supreme Court's governing rule.[6] Ill. Sup. Ct. R. 315(b)(2). More importantly, even if Alvarez actually filed what he says is the petition for leave to appeal to the Illinois Supreme Court, procedural default still applies because in the *direct* appeal to the intermediate court, he challenged only the trial court's jury instructions. So he failed to raise his habeas claims "at each level of the state court system," *McDowell*, 737 F.3d at 482. It is well established that "an appellant does not fully and fairly present a federal claim to the state courts when he raises that claim for the first time ... in a petition asking the state supreme court to grant him leave to appeal." *Lewis*, 390 F.3d at 1031. Because Illinois courts did not receive "a full and fair opportunity to resolve [Alvarez's] federal constitutional claims"

---

[6]The State contends that, "based on conversations with the state court clerks, th[e] petitioner did not file a petition for leave to appeal (PLA) to the Illinois Supreme Court ... ." Resp.'s Answer at 4. On reply, however, Alvarez attached a signed and notarized PLA dated April 18, 2018. Pet. for Leave to Appeal at 74-90. Under Illinois law, a petition for leave to appeal must be filed within 35 days from the entry of the judgment of the Appellate Court. Ill. Sup. Ct. R. 315(b)(2). Given that the Appellate Court's decision in Alvarez's case was issued on February 1, 2018, Alvarez should have filed the petition by March 8, 2018. In other words, even if Alvarez *had* actually filed the petition on April 18, it was untimely.

before he presented them to this Court, Alvarez has procedurally defaulted. *See O'Sullivan*, 526 U.S. at 838.

That said, even when habeas claims are procedurally defaulted, petitioners might still be entitled to federal habeas review in certain circumstances. There are two ways that petitioners can overcome procedural default: (1) demonstrating cause for the default and actual prejudice from the default; or (2) showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, however, Alvarez has failed to demonstrate either sufficient cause or a potential fundamental miscarriage of justice.

First, the only possible "cause" for Alvarez's procedural default is his claim of ineffective assistance of counsel. It is true that "[a]ttorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside [a] procedural default." *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) (cleaned up). But that claim is *itself* defaulted here. More specifically, an ineffective assistance of counsel claim must be presented to the state court independently before it may be used to establish cause for a procedural default in federal court. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *see also Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002) ("If the second claim of ineffective assistance of counsel is itself defaulted, the petitioner will be fully defaulted.") (cleaned up). As discussed earlier, Alvarez did not mention any of his habeas claims on direct appeal, nor does the record suggest that he ever presented an independent claim for ineffective assistance of counsel to the

7

state court. The rules can be difficult for a *pro se* litigant to navigate, but they must be followed. Alvarez failed to file a post-conviction petition for ineffective assistance of trial and appellate counsel in state court, so he cannot now present ineffective assistance as the cause for the procedural default.

Second, Alvarez has not shown that the absence of federal review would result in a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent ... ." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (cleaned up). This standard sets "an extremely high bar," applying only in the "rare case" where the petitioner can prove he is actually innocent with new, reliable evidence. *McDowell*, 737 F.3d at 483. Here, the record not only contains compelling circumstantial evidence of Alvarez's involvement in the crime, but Alvarez has also failed to present any new evidence to rebut the state court's factual findings. On this record, the denial of Alvarez's habeas petition would not result in a fundamental miscarriage of justice.

Because Alvarez failed to properly assert his federal habeas claims at each level of state review, and because he cannot overcome this procedural default, his habeas petition must be denied.

### B. Certificate of Appealability

To appeal the denial of his habeas petition, Alvarez must first obtain a certificate of appealability. Under 28 U.S.C. § 2253, "an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the

circuit justice or judge first issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To obtain a certificate of appealability, Alvarez must "ma[ke] a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). When, as here, the district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability may only issue when the "prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, absent any new evidence to contradict the state court's factual findings, reasonable jurists would not debate whether Alvarez has made a substantial showing of a valid constitutional claim, nor would they conclude that Alvarez deserves encouragement to proceed further. *See Slack*, 529 U.S. at 484. Likewise, given Alvarez's failure to either file a post-conviction petition or raise any of his habeas claims on direct appeal, his procedural default is not reasonably debatable either. *See id.* ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). The Court declines to issue a certificate of appealability.

9

## III. Conclusion

The habeas petition is denied, and the Court declines to issue a certificate of appealability. The status hearing of September 25, 2020 is vacated.

ENTERED:

*Edmond E. Chang*

Honorable Edmond E. Chang
United States District Judge

DATE: July 15, 2020